**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**
**MADISON DIVISION**

| | | |
|---|---|---|
| CURT MANUFACTURING, LLC,<br>a Wisconsin Corporation, | : <br>: <br>: | **Case No: 18-cv-1054** |
| Plaintiff, | : <br>: | **COMPLAINT FOR DAMAGES,**<br>**INJUNCTIVE, AND OTHER RELIEF** |
| v. | : <br>: | **FOR VIOLATION OF 15 USC § 1114;**<br>**15 USC § 1125(a); 15 USC § 1125(c); AND** |
| PARTSHAWK, LLC, TERRY PERRIN,<br>MICHAEL S. PERRIN, and JOHN DOES<br>1-100, individually or as corporate/business<br>entities, | : <br>: <br>: <br>: | **RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |
| Defendants. | | |

Plaintiff CURT Manufacturing, LLC ("CURT") brings this action against Defendant Partshawk, LLC, Terry Perrin, Michael S. Perrin, and John Does 1-100 (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; common law trademark infringement; common law unfair competition; deceptive trade practices in violation of Wis. Stat. § 100.18; and tortious interference with contract and business relations, and alleges as follows.  These claims arise from Defendants' misappropriation of CURT's trademarks in conjunction with Defendants' unlawful and unauthorized sale of CURT's products on the Internet.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff CURT is a Wisconsin corporation with its principal place of business located in Eau Claire, Wisconsin.

2. Upon information and belief, Defendant Partshawk, LLC is a limited liability company with its principal place of business in Miami, Florida, and operator of the

website www.partshawk.com, storefront "Partshawk" on www.amazon.com ("Amazon") and "partshawk" on www.ebay.com ("eBay").

3.     Upon information and belief, Defendant Michael S. Perrin is an individual who resides in Miami, Florida, operates the website www.partshawk.com and the storefronts "Partshawk" on Amazon and "partshawk" on eBay, and purports to be the Chief Information Officer of Partshawk.

4.     Upon information and belief, Defendant Terry Perrin is an individual who resides in Miami, Florida, operates the website www.partshawk.com, the storefronts "Partshawk" on Amazon and "partshawk" on eBay, and purports to be the Chief Executive Officer of Partshawk.

5.     The true names, involvement, and capacities, whether individual, corporate, associated or otherwise of Defendants John Does 1 through 100 are unknown to CURT.  Therefore, CURT sues these Defendants by a fictitious name.  CURT is informed and believes, and on that basis alleges, that the John Doe Defendants sued herein are equally responsible for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the true names, involvement, and capacities of these parties are ascertained, CURT will seek leave to amend this Complaint accordingly.

6.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for CURT's claims that arise under federal law and 28 U.S.C. § 1367 for CURT's claims that arise under state law because they form part of the same case or controversy as CURT's claims that arise under federal law.

7.     This Court has personal jurisdiction over Defendants because they have sold, distributed, offered for sale, and/or advertised goods in Wisconsin and directed their

2

tortious activities toward Wisconsin by engaging in actions and infringing on CURT's trademarks with the knowledge that their actions would likely injure CURT in Wisconsin. Defendants have caused injury to CURT in Wisconsin through acts in Wisconsin, including the sale, distribution, and advertising of CURT goods in Wisconsin.  Defendants have also caused injury to CURT in Wisconsin through acts outside of Wisconsin while also (a) engaging in solicitation and service activities in Wisconsin, and (b) selling products into Wisconsin that were used and consumed within Wisconsin in the ordinary course of trade.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### CURT And Its Trademarks

9.     The CURT family of brands is comprised of CURT, ARIES, LUVERNE Truck Equipment, and UWS.

10.     CURT is the leading manufacturer of USA-made hitches and a complete line of towing products, including gooseneck, 5th wheel and weight distribution hitches, as well as electrical components, ball mounts, trailer balls, cargo carriers, bike racks and other towing accessories (the "CURT Products").

11.     ARIES is a fast-paced marketer and innovator of truck, Jeep, SUV and CUV accessories.  ARIES products are made vehicle-specific for a custom fit, and they are available for a wide variety of makes and models sold in North America.

12.     LUVERNE Truck Equipment has been manufacturing quality automotive accessories in the United States since 1963 and it offers a broad base of quality, functional aftermarket accessories for pickup trucks, commercial vans and SUVs, specializing in American-

3

made grille guards, running boards and side steps.  Its products are primarily made from high-quality stainless steel, aluminum and mild steel.

13.     UWS is a leading manufacturer and designer of USA-made storage carriers and truck accessories, offering a full range of truck bed toolboxes, liquid transfer cases, dog boxes, trailer boxes and other truck storage solutions.

14.     CURT sells its products exclusively through a network of authorized resellers ("Authorized Resellers").

15.     CURT devotes a significant amount of time, energy, and resources toward protecting the value of the CURT brands, products, names, and reputation.  By distributing CURT Products exclusively through its Authorized Resellers, CURT ensures that users of CURT Products receive the high-quality products they expect from CURT, as well as the customer service and information that only Authorized Resellers can provide.  In the highly-competitive after-market auto accessory market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

16.     To promote and protect the CURT brands, CURT has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: CURT® (U.S. Trademark Registration No. 2,329,616) (the "CURT® trademark"), ARIES (U.S. Trademark Registration No. 4798868) (the "ARIES® trademark"), LUVERNE (U.S. Trademark Registration No. 5048005) (the "LUVERNE® trademark"), and UWS (U.S. Trademark Registration No. 4568632) (the "UWS® trademark") (collectively, the "CURT Trademarks").

17.     The registration for each of the CURT Trademarks is valid, subsisting and in full force and effect.  Further, pursuant to 15 U.S.C. § 1065, the CURT Trademarks serve as conclusive evidence of CURT's ownership of the marks and its exclusive right to use and direct

4

the use of the marks in commerce and in connection with the sale and distribution of the CURT Products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

18.     CURT filed the CURT® trademark on May 27, 2005, and it was registered on October 10, 2006.  CURT has actively used the CURT® trademark since that time.

19.     CURT filed the ARIES® trademark on December 23, 2014, and it was registered on August 25, 2015.  CURT has actively used the ARIES® trademark since that time.

20.     CURT filed the LUVERNE® trademark on August 13, 2015, and it was registered on September 27, 2016.  CURT has actively used the LUVERNE® trademark since that time.

21.     The UWS® trademark was filed on September 8, 2011, and it was registered on July 15, 2014, and has actively been used since that time.

22.     CURT has actively used, advertised, and marketed products under the CURT Trademarks throughout the United States for decades.

23.     Since 1993, CURT has been selling after-market auto accessories, beginning as a trailer ball distribution business run out of the back of a car and developing into a business with 1,000 associates world-wide, with manufacturing plants in Wisconsin, South Dakota, Florida and the Philippines, and 12 regional warehouses across the United States and Canada.

24.     Consumers recognize the CURT Trademarks as being associated with high quality, safe, and trustworthy automotive accessories.

25.     Consumers identify the CURT name as offering a made-in-USA custom-fit trailer hitches and wiring; comprehensive, in-house testing capabilities for safety; ISO / TS

5

16949 certification for quality manufacturing; leading first-to-market track record and order-fill rate; and a full line of towing products, including heavy-duty equipment.

26. For all these reasons, the CURT Trademarks are widely recognized by the general consuming public of the United States and CURT is recognized as the source of products bearing the CURT Trademarks.

27. Due to the superior quality and exclusive distribution of CURT Products, and because CURT is uniquely recognized as the source of these high quality products, the CURT Trademarks have substantial value.

### Online Marketplaces and the Challenges They Present To CURT Product Quality

28. E-commerce retail sales have exploded over the past decade. From 2007 to 2017, the percentage of retail sales that were completed through e-commerce channels rose from 3.1% to 8.2%. https://www.digitalcommerce360.com/2017/02/17/us-e-commerce-sales-grow-156-2016/; https://fred.stlouisfed.org/series/ECOMPCTSA.

29. In 2016, consumers spent $394.86 billion on e-commerce sales, a 15.6% increase from 2015. *Id.* The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2016 United States consumers spent $147.0 billion in e-commerce sales on Amazon, a 31.3% increase from 2015. *Id.*

30. While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

31. The marketplaces allow third-parties to sell products anonymously, i.e., without disclosing their actual identity or sources to consumers. As such, any person who is able

6

to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his/her identity to the consuming public.

32.     It is common for these unauthorized sellers to sell diverted products well past their expiration date or to mix fake or diluted products in shipments to unwitting consumers. https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.  Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust these marketplaces and think that the products they are buying through these marketplaces are genuine. https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

33.     Because these diverters operate anonymously, a manufacturer has no ability to exercise its quality controls over the products they sell or to ensure that the products are safe.  The manufacturer's inability to exercise control over the quality of these products presents serious risks to the safety of consumers – particularly where, as here, the products involve application on consumers' vehicles.

34.     The reality of online marketplaces also poses threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

35.     When purchasing products on a marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers.  Indeed, on some marketplaces, all sellers are listed under one product listing.

36.     When a customer purchases a product on a marketplace and receives a damaged, defective, or poor quality product, the customer is much more likely to associate that frustration with the brand/manufacturer than the anonymous seller.

7

37.     The online marketplaces give disgruntled customers a powerful and convenient forum to air their grievances – product reviews.  Any consumer who is dissatisfied with a product he/she receives can post a review on the marketplace for all other consumers to see.   Most often, these reviews, which are often permanently fixed, will criticize the brand/manufacturer, not the seller.

38.     These product reviews have significant impact on a brand's reputation. Survey results show that 82% of United States adults sometimes consult online reviews when buying a new product online and 40% "always" or "almost always" consult reviews. http://www.pewinternet.org/2016/12/19/online-reviews/.

39.     Consumers place extraordinary trust in these online reviews, as they are more than 10 times more likely to rely on consumer-generated product reviews than product descriptions written by manufacturers.  https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.

40.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's online product listings.  According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from purchasing a particular product.  https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

### CURT Has Been The Target Of Multiple Negative Online Marketplace Reviews From Customers Who Purchased Products From Unauthorized Sellers

41.     CURT has been a victim of the issues caused by unauthorized sellers on the online marketplaces.   Indeed, CURT has received several negative online marketplace reviews from customers who purchased products from unauthorized sellers.

8

42.     On July 14, 2017, a customer, A Desert Dweller complained that he received an incomplete product:   "Hitch pin and clip were 'not' included in the package as described.  The sticker on product even states to look inside shaft for the pin, but it was missing.  This is the second time I've had to exchange an order – the first time was wrong side ball mount.  Now my trip is around the corner and I unfortunately can not wait for another exchange/replacement."

★☆☆☆☆ **Missing parts: hitch pin and clip**
By A Desert Dweller on July 14, 2017
Verified Purchase

Hitch pin and clip were "not" included in the package as described. The sticker on product even states to look inside shaft for the pin, but it was missing. This is the second time I've had to exchange an order -- the first time was wrong size ball mount. Now my trip is around the corner and I unfortunately can not wait for another exchange/replacement.

43.     On August 1, 2018, another customer, Lisa Cotsonas, complained the product was missing necessary components: "Very disappointed.  Did not come with Hardware or instructions.  This is not the way it was advertised in the website."



44.     On June 6, 2018, another customer, JJ, complained that the product was not properly prepared for shipping:  "Pros: Product is good, sturdy, well built and fits my '17 Frontier.

Cons: I have never seen such a great product packaged for shipment so very poorly. When you put a large , HEAVY item in a box that is way too big and only put in sheets of craft paper as support/packaging.....well you can imagine the result. :( The bar moves all around in the box, tears the box and ends up getting very scratched up. Thankfully there was a little bit of bubble wrap around the receiver end; but that's it as far as any semi-decent protection. If this product weren't so heavy and awkward to deal with I would have put it back in the torn up box & shipped

9

it back! But, I kept it, sprayed painted over the scratches & marks to protect from rust. Which is a step I don't think we should be expected to do. :( Most people expect a brand new, ready to go item when they pay for a brand new item; not an item that looks used due to all the scratches!! PLEASE rethink your packaging!!! At the very least at least wrap the entire hitch in heavy duty bubble wrap & tape!!!"



★☆☆☆☆ Product is good, sturdy
By JJ on June 6, 2018
Verified Purchase

Pros: Product is good, sturdy, well built and fits my '17 Frontier.
Cons: I have never seen such a great product packaged for shipment so very poorly. When you put a large , HEAVY item in a box that is way too big and only put in sheets of craft paper as support/packaging.....well you can imagine the result. :( The bar moves all around in the box, tears the box and ends up getting very scratched up. Thankfully there was a little bit of bubble wrap around the receiver end; but that's it as far as any semi-decent protection. If this product weren't so heavy and awkward to deal with I would have put it back in the torn up box & shipped it back! But, I kept it, sprayed painted over the scratches & marks to protect from rust. Which is a step I don't think we should be expected to do. :( Most people expect a brand new, ready to go item when they pay for a brand new item; not an item that looks used due to all the scratches!! PLEASE rethink your packaging!!! At the very least at least wrap the entire hitch in heavy duty bubble wrap & tape!!!

> 45.    On January 9, 2018, another customer, Al Pedroso, complained the product was missing necessary components:  "Can't use it little set screw Came defective."

★☆☆☆☆ One Star
By Al Pedroso on January 9, 2018
Verified Purchase

Can't use it little set screw Came defective.

> 46.    Likewise, on January 8, 2018, a customer, Kelly, complained that she was missing necessary components:  "This product didn't come with any of the screws and washers needed to assemble it. It took 4 runs to the hardware store the get the right sized materials to complete assembly which we only did because we were in a bind for time and needed this for holiday travel. Do NOT purchase this! "

★☆☆☆☆ This product didn't come with any of the screws and ...
By Kelly on January 8, 2018
Style: Bent folding shank    Verified Purchase
This product didn't come with any of the screws and washers needed to assemble it. It took 4 runs to the hardware store the get the right sized materials to complete assembly which we only did because we were in a bind for time and needed this for holiday travel. Do NOT purchase this!

> 47.    Upon information and belief, the foregoing complaints were made by consumers who purchased products from unauthorized sellers of CURT Products.

DocID: 4834-4510-2979.1

### CURT Has Implemented Quality Controls To Combat The Problems Presented By The Online Marketplaces And Protect The Value Of Its Trademarks

48.     Recognizing the safety risks to its consumers and the reputational concerns associated with the illegal sale of CURT Products by unauthorized sellers, CURT has implemented a quality control program that applies to both brick and mortar retail settings and online sellers with the twin aims of protecting consumers and protecting the value and goodwill associated with the CURT brands.

49.     The goal of this program is to ensure that consumers who buy CURT Products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the CURT name – in particular, safety and quality.

50.     The program seeks to minimize the likelihood that poor-quality products will reach consumers, which minimizes harm to the brands' goodwill.

51.     CURT's ability to exercise these quality controls is particularly important for the products it sells because there are numerous potential safety risks associated with consumers' use of after-market vehicle accessories that were not stored, handled, or shipped properly.

52.     CURT's ability to exercise these quality controls is essential to the integrity, safety, and quality of CURT Products, as well as the value of the CURT Trademarks and other intellectual property.

### Authorized Resellers Are Required To Adhere To CURT's Quality Control and Customer Service Requirements

53.     CURT maintains its strict quality controls over CURT Products by conducting all sales through its Authorized Resellers.

11

54.     Authorized Resellers are permitted to sell CURT Products only in approved channels and are required to abide by CURT's resale policy and other policies and procedures (collectively, the "CURT Policies").

55.     To prevent third parties from acquiring and reselling CURT Products, the CURT Policies permit Authorized Resellers to sell products only to end users.  Authorized Resellers are prohibited from selling CURT Products to anyone who intends to resell the products.

56.     Authorized Resellers are also prohibited from selling CURT Products on any website, including third-party marketplaces such as Amazon, eBay, Walmart Marketplace, or Craigslist, without prior written consent of CURT.

57.     These restrictions allow CURT to know who its Authorized Resellers are, which ones are selling online, and how to immediately contact them.

58.     The CURT Policies require Authorized Resellers to adhere to CURT's quality control requirements.

59.     To ensure that customers receive the genuine and high-quality products they expect from CURT, the CURT Policies require Authorized Resellers to inspect all products for damage, defect, or other nonconformance and remove all such products from inventory.

60.     The CURT Policies also require that Authorized Resellers handle and store the products in accordance with guidelines issued by CURT.  Importantly, for the safety of consumers, Authorized Resellers must handle and store CURT Products in accordance with any directions on product labels or other storage guidelines and as otherwise specified by CURT.

61.     To avoid consumer confusion and ensure that customers receive genuine CURT Products, Authorized Resellers are prohibited from relabeling, repackaging, or altering

CURT Products.  Authorized Resellers must not remove, translate, or modify the contents of any label or literature on or accompanying CURT Products.  Further, Authorized Resellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on CURT Products, including lot codes, batch codes, and UPCs.

62.     CURT also ensures that consumers receive safe products by requiring its Authorized Resellers assist with recalls and other consumer safety information efforts.

63.     The CURT Policies also require Authorized Resellers to provide certain services to their customers.  Authorized Resellers must familiarize themselves with the features of all CURT Products kept in their inventory.  This requirement ensures that Authorized Resellers are uniquely qualified not only to recommend the CURT Products best suited for end-user consumers' needs, but also to advise end-user consumers on how to use CURT Products safely and properly.

64.     Following the sale of genuine CURT Products, Authorized Resellers supply ongoing support to end-user consumers and are required to endeavor to provide expeditious customer service by responding promptly to consumer inquiries.

65.     CURT's quality control requirements are legitimate, substantial, and non-pretextual and have been implemented so that CURT can control the quality of goods manufactured and sold under the CURT Trademarks, so as to protect consumers, as well as the value and goodwill associated with the CURT Trademarks.

66.     These quality control requirements are also material.  Consumers would find it relevant that these quality controls exist and that CURT exercises these quality controls over the products sold by its Authorized Resellers, but that it is unable to exercise its quality controls over products sold by unauthorized sellers.

## Authorized Resellers Must Be Approved To Sell Online And
## Must Comply With Additional Requirements

67.     In order to sell CURT Products online, Authorized Resellers are vetted and must be approved by CURT to be an authorized online reseller ("Authorized Online Resellers"). Authorized Online Resellers may sell CURT Products only on websites that CURT has specifically approved.

68.     Authorized Online Resellers are vetted by CURT to ensure that they meet CURT's criteria and that they will properly represent the CURT brands.

69.     Authorized Online Resellers must have an appropriately registered and recognized business that meets applicable criteria (i.e. credit, sales history, facility requirements).

70.     Authorized Online Resellers must also have an acceptable online review history, without a significant presence of negative product or seller reviews.

71.     Authorized Online Resellers must also have an acceptable business operating record, which includes evaluating, among other things, any lawsuits, complaints, or actions related to the delivery of damaged products, misrepresented products, poor-quality products, or other similar issues.

72.     In addition to complying with the quality controls and customer service requirements discussed above, Authorized Online Resellers must adhere to several additional requirements.

73.     In order for CURT to be able to verify its Authorized Resellers, Authorized Online Resellers must clearly state their business name and current contact information on the websites where they sell, unless otherwise approved by CURT.

DocID: 4834-4510-2979.1

74.     Authorized Online Resellers must have a mechanism for soliciting customer feedback/reviews and must take appropriate steps to address that feedback.  Authorized Online Resellers must cooperate with CURT in investigating any negative product reviews.

75.     Authorized Online Resellers who sell on Amazon and eBay must also maintain a certain seller feedback score.

76.     To further its efforts and ability to protect the value and goodwill associated with the CURT brands and to prevent consumer confusion, CURT has approved only a limited number of Authorized Online Resellers on the Amazon and eBay Marketplaces.  This limitation allows CURT to closely monitor seller and product reviews and to promptly address any issues directly with its approved sellers.  This limitation also helps prevent the confusion that exists when consumers are presented with many marketplace sellers and are unable to discern which are authorized and subject to CURT's quality controls.

### CURT Ensures That Its Authorized Online Resellers Comply With Its Quality Control Requirements

77.     In order to ensure that its Authorized Online Resellers adhere to CURT's quality control requirements, CURT regularly monitors sales of its products online.

78.     Pursuant to this program, CURT regularly monitors Authorized Online Resellers and online product and seller reviews, conducts test purchases and inspections, and confirms Authorized Online Resellers' compliance with all of its quality control and Authorized Online Reseller requirements.

79.     With respect to online marketplaces, CURT communicates with its authorized marketplace sellers to understand the nature of any negative reviews and to facilitate appropriate follow-on action items.  CURT is also able to discipline sellers who fail to comply.

DocID: 4834-4510-2979.1

80.    In addition to auditing its Authorized Online Resellers, due to the safety risks to customers and reputational concerns associated with the illegal sale of products bearing the CURT Trademarks by unauthorized Internet sellers, CURT polices the sale of its products online.

### Genuine CURT Products Come With A Manufacturer's Warranty

81.    CURT Products purchased from Authorized Resellers also come with the CURT manufacturer's warranty (the "Warranty").   The Warranty provides limited lifetime warranty coverage against defects in factory workmanship and materials for CURT products sold by Authorized Resellers.   Because products sold by unauthorized sellers are not subject to CURT's quality control requirements and CURT cannot ensure the quality of the products sold by unauthorized sellers, the Warranty is not available for CURT Products sold by unauthorized sellers, like Defendants, or through unauthorized channels, unless prohibited by law.

### Defendants Are Illegally Selling Products Bearing The CURT Trademarks And Interfering With CURT's Quality Controls

82.    Through policing its brands online, CURT discovered products bearing the CURT Trademarks being illegally sold by Defendants on the website www.partshawk.com, on Amazon under the storefront name "Partshawk," and on eBay under the storefront name "partshawk."

83.    Defendants are not Authorized Resellers of CURT Products.

84.    Defendants sell products on the website www.partshawk.com, "Partshawk" on Amazon and "partshawk" on eBay storefronts anonymously.

85.    Because Defendants are not Authorized Resellers of CURT Products and sell products anonymously, CURT is unable to exercise control over the quality of products Defendants sell bearing the CURT Trademarks.

16

86.     Defendants' sale of products bearing the CURT Trademarks interferes with CURT's ability to exercise quality control over products bearing the CURT Trademarks because CURT is unable to audit Defendants to ensure they are complying with CURT's quality controls and/or close their accounts if they fail to comply with CURT's quality control requirements.

87.     The products Defendants sell are not genuine CURT Products because the products are not authorized for sale by CURT and are not subject to CURT's quality controls.

88.     The products Defendants sell are materially different from genuine CURT Products because they are not subject to, and interfere with, CURT's quality controls.

89.     The products Defendants sell are materially different from genuine CURT Products because they do not come with the customer service benefits that accompany genuine CURT Products, which are essential elements of CURT Products.

90.     The products Defendants sell are materially different from genuine CURT products because they do not come with the Warranty.

91.     Despite these facts, Defendants have sold, and continue to sell, products bearing the CURT Trademarks through the website www.partshawk.com, "Partshawk" on Amazon and "partshawk" on eBay storefronts without CURT's consent.

92.     Upon information and belief, Defendants, through their storefronts, accept and fulfill orders from Wisconsin residents for products bearing the CURT Trademarks and ship products bearing the CURT Trademarks to persons located in Wisconsin.

DocID: 4834-4510-2979.1

**Consumers Have Complained About The Products Defendants Sell
On The Website www.partshawk.com, "Partshawk" on Amazon and "partshawk" on eBay
Storefronts**

93.     Several consumers have complained about the products they were sold by Defendants through the website www.partshawk.com, "Partshawk" on Amazon and "partshawk" on eBay storefronts.

94.     These complaints are typical of the complaints made about products sold by unauthorized sellers, including quality control issues and products not delivered in a timely fashion.

95.     For example, on September 25, 2018, "usmcpride" complained about receiving a product with packaging issues: "Received product, but was totally amazed on how tore up the package was.  It was in shreds, and I am totally dumbfounded how it arrived as promised.  Had to search for the lock key, found it embedded in bubble wrap with tape. Packaging needs to be improved, other than that, the product is serving it's purpose."

★★★★☆  *"Received product , but was totally amazed on how tore up the package was. It was in shreds, and I am totally dumbfounded how it arrived as promised. Had to search for the lock key, found it embedded in bubble wrap with tape. Packaging needs to be improved, other than that, the product is serving it's purpose. "*
Read less
By usmcpride on September 25, 2018.

96.     On August 24, 2018, a customer, CJ, complained his product was not delivered in a timely manner: "Where is my Prime delivery?  I bought and paid on August 7 and it's August 24 the package did not arrive.  I DID NOT GET MY 3DAY PRIME ARRIVAL TO MY HOME."

★☆☆☆☆  *"Where is my Prime delivery? I bought and paid on August 7 and it's August 24 the package did not arrive. I DID NOT GET MY 3DAY PRIME ARRIVAL TO MY HOME "*
By CJ on August 24, 2018.

97.     On August 22, 2018, a customer, Seth Crawford, complained that he did not receive his full order: "Did not come with the two nuts as depicted."

★★★★☆  *"Did not come with the two nuts as depicted. "*
By Seth Crawford on August 22, 2018.

18

98.     On August 8, 2018, a customer, "Truckman", wrote that the he did not receive all of his product: "Missing parts!  I would have given this product 5 stars, but opening the box and inventorying all parts, I realized I was missing two 3/8" bolts and washers. Fortunately I had the missing hardware in my stash so I was able to install the rails without delay.  There are a couple YouTube videos out there detailing the installation which enhances the manufacturer's instructions."

★★★★☆  "Missing parts! I would have given this product 5 stars, but opening the box and inventorying all parts, I realized I was missing two 3/8" bolts and washers. Fortunately I had the missing hardware in my stash so I was able to install the rails without delay. There are a couple YouTube videos out there detailing the installation which enhances the manufacturer's instructions. "
Read less
By Truckman on August 8, 2018.

99.     On July 28, 2018, a customer, Kindle Customer, complained they did not receive their order: "I did not receive the order."

★☆☆☆☆  "I did not receive the order "
By Kindle Customer on July 28, 2018.

100.    On July 12, 2018, a customer, "A point of view," stated they did not get their complete order: "I order two of this items, but I just got 1, I send a email, to complying, they indicated that the other was on the way, but never arrived.  The unit didn't have any hardware at all, no even the screws to hold the tire, which on the instructions indicate that was included. The product is a great idea and is really functional, but the company is [short] on service."

★★★☆☆  "I order two of this items, but I just got 1, I send a email, to complying, they indicated that the other was on way, but never arrived. The unit didn't have any hardware at all, no even the screws to hold the tire, which on the instructions indicate that was included. The product is a great idea and is really functional, but the company is shore on service "
Read less
By A point of view on July 12, 2018.

**CURT Has Attempted To Stop Defendants' Illegal Sale Of Products Bearing The CURT Trademarks But Defendants Continue To Willfully Infringe On The CURT Trademarks**

101.    After CURT discovered products bearing the CURT Trademarks being illegally sold on the website www.partshawk.com, "Partshawk" on Amazon and "partshawk" on

eBay storefronts, CURT investigated the storefront to determine who was operating the storefronts.

102. On or about July 23, 2018, counsel for CURT sent Defendants a cease and desist letter, demanding that they immediately cease selling products bearing the CURT Trademarks.

103. Defendants did not respond to this letter and continued to offer products bearing the CURT Trademarks on the website www.partshawk.com, "Partshawk" on Amazon and "partshawk" on eBay storefronts.

104. Hearing nothing from Defendants, counsel for CURT sent them a letter on or about August 6, 2018, informing them of their obligations to preserve information relevant to the impending lawsuit by CURT against them in the event they chose to continue to sell products bearing the CURT Trademarks.

105. Defendants did not respond to this letter and continued to offer products bearing the CURT Trademarks on the website www.partshawk.com, "Partshawk" on Amazon and "Partshawk" on eBay storefronts.

106. Hearing nothing from Defendants, counsel for CURT sent them a letter on or about October 9, 2018 demanding that they cease and desist selling CURT products and enclosing a draft complaint that counsel for CURT intended to file if Defendants continued to sell products bearing the CURT Trademarks.

107. After learning that Defendants were represented by counsel Zachary S. McWilliams ("McWilliams"), counsel for CURT reached out directly to McWilliams via phone and email on October 30, 2018, via email November 6, 2018, and via email and a phone message

on November 14, 2018 demanding that Defendants remove their CURT products from their website, Amazon and eBay storefronts.

108.   McWilliams responded on November 15, 2018 inquiring if Defendants could become authorized sellers of CURT products.

109.   On November 27, Lee Adelman, the Vice President for eCommerce Sales for CURT responded to Terry Perrin, the CEO of PartsHawk, that CURT would not authorize Defendants to sell CURT products on the Internet and that Defendants' continued sales of products bearing the CURT Trademarks was illegal.

110.   For the reasons discussed above, the products Defendants sell are not genuine CURT products, are not subject to CURT's quality control requirements, interfere with CURT quality controls, and are materially different from genuine CURT Products.

111.   By continuing to sell non-genuine products bearing the CURT Trademarks, Defendants have interfered with CURT's ability to exercise control over products being sold bearing the CURT Trademarks.

112.   Defendants have also misled, and continue to mislead, consumers into believing they are purchasing genuine CURT Products when, in fact, they are not.

113.   Defendants' actions infringe on the CURT Trademarks.

114.   Further, Defendants' disregard of communications from CURT and continuation of selling of non-genuine products despite being informed of their unlawful conduct, demonstrates that they are acting intentionally, willfully, and maliciously.

### Defendants Are Tortiously Interfering With CURT's Agreements With Its Authorized Resellers

115.   Upon information and belief, Defendants have purchased CURT Products from CURT Authorized Resellers for purposes of reselling them on the Internet.

21

116.    The CURT Policies prohibit CURT's Authorized Resellers from selling CURT Products to third parties who intend to resell the products.

117.    Defendants were informed of this prohibition by at least July 23, 2018. Indeed, the cease and desist letter CURT sent Defendants on July 23, 2018 informed Defendants that CURT restricts the manner in which Authorized Resellers may sell CURT Products, and that Authorized Resellers may sell CURT Products only to end-user customers through authorized channels and are specifically prohibited from selling products to resellers or any person or entity they know or have reason to know intends to resell the products.

118.    Defendants were also informed that by purchasing CURT Products from an Authorized Reseller for purposes of resale, they were causing a breach of the agreement between CURT and its Authorized Reseller and interfering with CURT's agreements and business relationships.

119.    Defendants were also advised that if they continued to acquire CURT Products from CURT's Authorized Resellers for purposes of resale, they would be liable for tortiously interfering with CURT's contracts and/or business relationships.

120.    Despite being provided this information, upon information and belief, Defendants have continued to acquire CURT Products from CURT's Authorized Resellers.

121.    Upon information and belief, Defendants willfully and knowingly induced unknown Authorized Resellers to breach their agreements with CURT so that they could acquire CURT Products and resell them.

**CURT Has Suffered Significant Harm As A Result Of Defendants' Conduct**

122.    CURT has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

22

123.    CURT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights and brand integrity.

124.    CURT is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell CURT Products, causing continued irreparable harm to CURT's reputation, goodwill, relationships, intellectual property and brand integrity.

125.    Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton and contrary to law.

126.    Defendants' willful violations of the CURT Trademarks and continued pattern of misconduct demonstrate intent to harm CURT.

### FIRST CAUSE OF ACTION

**Trademark Infringement**
**U.S.C. §§ 1114 and 1125(a)(1)(a)**

127.    CURT hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.    CURT is the owner of the CURT Trademarks.

129.    CURT has registered the CURT Trademarks with the United States Patent and Trademark Office.

130.    The CURT Trademarks are valid and subsisting trademarks in full force and effect.

131.    Defendants willfully and knowingly used, and continue to use, the CURT Trademarks in commerce for purposes of selling CURT Products on the Internet without CURT's consent.

23

132.     The products Defendants sell are not genuine CURT Products because the products are not authorized for sale by CURT, are not subject to CURT's quality controls, and are materially different from genuine CURT Products.

133.     The products Defendants sell are materially different from genuine CURT products because they do not come with the Warranty.

134.     Defendants' unauthorized sale of products bearing the CURT Trademarks interferes with CURT's ability to exercise quality control over products bearing the CURT Trademarks because CURT is unable to audit Defendants to confirm they are complying with CURT's quality control requirements and/or close their account if they fail to comply with CURT's quality control requirements.

135.     The products Defendants sell are materially different from genuine CURT Products because they are not subject to, and interfere with, CURT's quality controls.

136.     The products Defendants sell are materially different from genuine CURT Products because they do not come with the customer service benefits that accompany genuine CURT Products.

137.     Defendants' unauthorized sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to CURT's quality controls when they are not.

138.     Defendants' unauthorized sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine CURT Products when they are not.

139.     Defendants' unauthorized sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the

DocID: 4834-4510-2979.1

products Defendants offer for sale are sponsored, authorized, or otherwise connected with CURT when they are not.

140.    Defendants' unauthorized use of the CURT Trademarks has infringed upon and materially damaged the value of the CURT Trademarks and caused significant damage to CURT's business relationships.

141.    As a proximate result of Defendants' actions, CURT has suffered, and continues to suffer immediate and irreparable harm.  CURT has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

142.    CURT is entitled to recover the damages caused by Defendants' infringement of the CURT Trademarks and to disgorgement of Defendants' profits from their willfully infringing sales and unjust enrichment.

143.    CURT is entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, CURT will suffer irreparable harm.

144.    CURT is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the CURT Trademarks.

## SECOND CAUSE OF ACTION

### Unfair Competition
### 15 U.S.C. § 1125(a)

145.    CURT hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

146.    CURT is the owner of the CURT Trademarks.

147.    CURT has registered the CURT Trademarks with the United States Patent and Trademark Office.

148.    The CURT Trademarks are valid and subsisting trademarks in full force and effect.

149.    Defendants have willfully and knowingly used, and continue to use, the CURT Trademarks in interstate commerce for purposes of selling and advertising CURT Products without CURT's consent.

150.    The products Defendants advertise and sell are not genuine CURT Products because the products are not authorized for sale by CURT, are not subject to CURT's quality controls, and are materially different from genuine CURT Products.

151.    Defendants' unauthorized advertisement and sale of products bearing the CURT Trademarks interferes with CURT's ability to exercise quality control over products bearing the CURT Trademarks because CURT is unable to audit Defendants to confirm they are complying with CURT's quality control requirements and/or close their account if they fail to comply with CURT's quality control requirements.

152.    The products Defendants advertise and sell are materially different from genuine CURT Products because they are not subject to, and interfere with, CURT's quality controls.

153.    The products Defendants advertise and sell are materially different from genuine CURT products because they do not come with the customer service benefits that accompany genuine CURT Products.

154.    The products Defendants sell are materially different from genuine CURT products because they do not come with the Warranty.

26

155.    Defendants' use of the CURT Trademarks in connection with their unauthorized sale and advertising of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to CURT's quality control program when they are not.

156.    Defendants' use of the CURT Trademarks in connection with their unauthorized sale and advertising of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine CURT Products when they are not.

157.    Defendants' use of the CURT Trademarks in connection with their unauthorized sale and advertising of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, approved by, or otherwise connected with CURT when they are not.

158.    Defendants' unauthorized sale of products bearing CURT Trademarks and unauthorized use of CURT Trademarks in advertising infringes on the CURT Trademarks.

159.    Defendants' unauthorized sale of products bearing CURT Trademarks, and unauthorized use of CURT Trademarks in advertising, has materially damaged the value of the CURT Trademarks and has caused significant damages to CURT's business relations.

160.    As a proximate result of Defendants' actions, CURT has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

27

161.    CURT is entitled to recover the damages caused by Defendants' infringement of the CURT Trademarks and to disgorgement of Defendants' profits from their willfully infringing sales and unjust enrichment.

162.    CURT is entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, CURT will suffer irreparable harm.

163.    CURT is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the CURT Trademarks.

## THIRD CAUSE OF ACTION

### Common Law Trademark Infringement

164.    CURT hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

165.    CURT is the owner of the CURT Trademarks.

166.    CURT has registered the CURT Trademarks with the United States Patent and Trademark Office.

167.    The CURT Trademarks are valid and subsisting trademarks in full force and effect.

168.    The CURT Trademarks are distinctive and widely recognized by the consuming public.  CURT Products are sold and purchased through its Authorized Resellers throughout the United States, including Wisconsin.

169.    CURT is widely recognized as the designated source of goods bearing the CURT Trademarks.

170.   Defendants willfully and knowingly used, and continue to use, the CURT Trademarks in interstate commerce for purposes of selling CURT Products on the Internet without CURT's consent.

171.   The products Defendants sell are not genuine CURT Products because the products are not authorized for sale by CURT, are not subject to CURT's quality controls, and are materially different from genuine CURT Products.

172.   Defendants' unauthorized sale of products bearing the CURT Trademarks interferes with CURT's ability to exercise quality control over products bearing the CURT Trademarks because CURT is unable to audit Defendants to confirm they are complying with CURT's quality control requirements and/or close their account if they fail to comply with CURT's quality control requirements.

173.   The products Defendants sell are materially different from genuine CURT Products because they are not subject to, and interfere with, CURT's quality controls.

174.   The products Defendants sell are materially different from genuine CURT Products because they do not come with the customer service benefits that accompany genuine CURT Products.

175.   The products Defendants sell are materially different from genuine CURT products because they do not come with the Warranty.

176.   Defendants' unauthorized sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to CURT's quality control program when they are not.

29

177.    Defendants' unauthorized sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine CURT Products when they are not.

178.    Defendants' unauthorized sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with CURT when they are not.

179.    Defendants' knowing and willful use of the CURT Trademarks in connection with the unauthorized and illegal sale of products bearing the CURT Trademarks without CURT's consent infringes on the CURT Trademarks and is contrary to honest practice in industrial and commercial matters.

180.    Defendants' unlawful actions and unauthorized use of the CURT Trademarks has materially damaged the value of the CURT Trademarks, caused significant damage to CURT's business relations, and infringed on the CURT Trademarks.

181.    As a proximate result of Defendants' actions, CURT has suffered, and will continue to suffer, irreparable harm, as well as damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

182.    CURT is also entitled to punitive damages because Defendants acted maliciously toward CURT or in an intentional disregard of the rights of CURT.

## FOURTH CAUSE OF ACTION

### Common Law Unfair Competition

183.    CURT hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

184.    CURT is the owner of the CURT Trademarks.

DocID: 4834-4510-2979.1

185.     CURT has registered the CURT Trademarks with the United States Patent and Trademark Office.

186.     The CURT Trademarks are valid and subsisting trademarks in full force and effect.

187.     Defendants willfully and knowingly used, and continue to use, the CURT Trademarks in commerce for the purpose of selling and advertising products bearing the CURT Trademarks without the consent of CURT.

188.     The products Defendants advertise and sell are not genuine CURT Products because the products are not authorized for sale by CURT, are not subject to CURT's quality controls, and are materially different from genuine CURT Products.

189.     Defendants' unauthorized advertisement and sale of products bearing the CURT Trademarks interferes with CURT's ability to exercise quality control over products bearing the CURT Trademarks because CURT is unable to audit Defendants to confirm they are complying with CURT's quality control requirements and/or close their account if they fail to comply with CURT's quality control requirements.

190.     The products Defendants advertise and sell are materially different from genuine CURT Products because they are not subject to, and interfere with, CURT's quality controls.

191.     The products Defendants advertise and sell are materially different from genuine CURT Products because they do not come with the customer service benefits that accompany genuine CURT Products.

192.     The products Defendants sell are materially different from genuine CURT products because they do not come with the Warranty.

31

193.    Defendants' use of the CURT Trademarks in connection with their unauthorized sale and advertising of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to CURT's quality control program when they are not.

194.    Defendants' use of the CURT Trademarks in connection with their unauthorized sale and advertising of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine CURT Products when they are not.

195.    Defendants' use of the CURT Trademarks in connection with their unauthorized sale and advertising of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, approved by, or otherwise connected with CURT when they are not.

196.    Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse customers and induce customers to believe that Defendants' products are genuine and authentic CURT Products when, in fact, they are not.

197.    Defendants' unauthorized sale of products bearing CURT Trademarks and unauthorized use of CURT Trademarks in advertising infringes on the CURT Trademarks.

198.    Defendants' unauthorized sale of products bearing CURT Trademarks, and unauthorized use of CURT Trademarks in advertising, has materially damaged the value of the CURT Trademarks and has caused significant damages to CURT's business relations.

199.    As a proximate result of Defendants' actions, CURT has suffered, and continues to suffer, immediate and irreparable harm. CURT has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

200.    CURT is also entitled to punitive damages because Defendants acted maliciously toward CURT or in an intentional disregard of the rights of CURT.

## FIFTH CAUSE OF ACTION

### Deceptive Trade Practices
### Wis. Stat. § 100.18

201.    CURT hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

202.    CURT is the owner of the CURT Trademarks.

203.    CURT has registered the CURT Trademarks with the United States Patent and Trademark Office.

204.    The CURT Trademarks are valid and subsisting trademarks in full force and effect.

205.    Defendants willfully and knowingly used, and continue to use, the CURT Trademarks in commerce for purposes of advertising, promoting, and selling CURT Products on the Internet without CURT's consent.

206.    The products Defendants sell are not genuine CURT Products because the products are not authorized for sale by CURT, are not subject to CURT's quality controls, and are materially different from genuine CURT Products.

207.    Defendants' unauthorized sale of products bearing the CURT Trademarks interferes with CURT's ability to exercise quality control over products bearing the CURT

33

Trademarks because CURT is unable to audit Defendants to confirm they are complying with CURT's quality control requirements and/or close their account if they fail to comply with CURT's quality control requirements.

208.     The products Defendants sell are materially different from genuine CURT Products because they are not subject to, and interfere with, CURT's quality controls.

209.     The products Defendants sell are materially different from genuine CURT Products because they do not come with the customer service benefits that accompany genuine CURT Products.

210.     The products Defendants sell are materially different from genuine CURT products because they do not come with the Warranty.

211.     Defendants' use of the CURT Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the CURT Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are subject to CURT quality control requirements when they are not.

212.     Defendants' use of the CURT Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the CURT Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products come with the customer service benefits that accompany genuine CURT Products when they do not.

213.     Defendants' use of the CURT Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic CURT Products when they are not.

214. Defendants' use of the CURT Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the CURT Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with CURT when they are not.

215. Defendants' unauthorized and deceptive use of the CURT Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Defendants advertise using the CURT Trademarks are genuine CURT Products that are subject to CURT's quality controls requirement and come with the benefits associated with authentic CURT Products when they do not.

216. Defendants' use of the CURT Trademarks in connection with the unauthorized advertising, promotion, and sale of CURT Products is a deceptive trade practice under Wis. Stat. § 100.18.

217. As a result of Defendants' unlawful actions, CURT has suffered, and continue to suffer, irreparable harm. CURT has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

218. Pursuant to Wis. Stat. § 100.18(11)(a), CURT is entitled to injunctive relief enjoining Defendants' conduct.

219. Pursuant to Wis. Stat. § 100.18(11)(b), CURT is entitled to an award of costs and attorneys' fees.

220. CURT is also entitled to punitive damages because Defendants acted maliciously toward CURT or in an intentional disregard of the rights of CURT.

DocID: 4834-4510-2979.1

## SIXTH CAUSE OF ACTION

### Tortious Interference with Contract and Business Relations

221.    CURT hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

222.    CURT has contracts and business relationships with its Authorized Resellers, who have a contractual right to sell CURT Products in accordance with the CURT Policies.

223.    The CURT Policies and CURT's agreements with its Authorized Resellers restrict the manner in which Authorized Resellers may sell CURT Products. Specifically, the CURT Policies and CURT's agreements with its Authorized Resellers stipulate that Authorized Resellers may sell only to end-user consumers through approved channels. Authorized Resellers are prohibited from selling or transferring CURT Products to any person or entity for resale without the prior written consent of CURT.

224.    Defendants knew that the CURT Policies and CURT's agreements with its Authorized Resellers prohibitted CURT's Authorized Resellers from selling CURT Products to third parties, such as Defendants, for purposes of resale.

225.    Defendants' were provided notice of this prohibition by at least July 23, 2018, through the cease and desist letter they received from CURT.

226.    Despite having knowledge of this prohibition, Defendants willfully and knowingly interfered with the CURT Policies and CURT's agreements with its Authorized Resellers by inducing CURT's Authorized Resellers to breach their agreements and sell products to Defendants so that they could resell them on the Internet.

DocID: 4834-4510-2979.1

227.    Defendants acted with a wrongful purpose by acquiring products from Authorized Resellers for the purpose of resale in violation of the CURT Policies and CURT's agreements with its Authorized Resellers.

228.    Defendants' actions caused injury to CURT for which CURT is entitled to damages in an amount to be proven at trial.

229.    CURT is entitled to punitive damages because Defendants acted with oppression, fraud, and malice

230.    CURT is also entitled to punitive damages because Defendants acted maliciously toward CURT or in an intentional disregard of the rights of CURT.

## PRAYER FOR RELIEF

WHEREFORE, CURT prays for relief and judgment as follows:

A.    Judgment in favor of CURT and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

   i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all CURT Products;

   ii)   Prohibiting the Enjoined Parties from using any of the CURT Trademarks in any manner, including advertising on the Internet;

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all CURT Products as well as any products bearing any of the CURT Trademarks;

iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the CURT Trademarks, including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of CURT's products, or any of the CURT Trademarks;

vi)    Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the CURT Trademarks which associate CURT's products or the CURT Trademarks with the Enjoined Parties or the Enjoined Parties' website;

vii)    Requiring the Enjoined Parties to take all action to remove unauthorized CURT Trademarks from the Internet, including from www.partshawk.com, www.amazon.com and www.ebay.com;

C.    An award of attorneys' fees, costs, and expenses; and

DocID: 4834-4510-2979.1

D.      Such other and further relief as the Court deems just, equitable and proper.

Dated this 19th day of December, 2018.

/s/ Ann M. Maher
Ann M. Maher
Husch Blackwell LLP
555 East Wells Street
Suite 1900
Milwaukee, WI 53202-3819
Telephone: 414-978-5410
Facsimile: 414-223-5000
Email: ann.maher@huschblackwell.com

Of Counsel:
Martha Brewer Motley (Ohio Bar No. 0083788)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
Columbus, Ohio  43215
Telephone:  614-464-5626
Fax:  614-719-5080
Email:  mbmotley@vorys.com
*Pro Hac Vice application forthcoming*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CURT demands a trial by jury on all issues so triable.

DocID: 4834-4510-2979.1